■ In the Matter of PARKCHESTER MANAGEMENT CORP., Appellant, v NEW YORK CITY CONCILIATION AND APPEALS BOARD, Respondent. — Judgment, Supreme Court, New York County, entered August 15, 1980, dismissing the petition in this article 78 proceeding relating to the establishment of initial rentals in the Parkchester development, unanimously reversed, on the law, without costs and without disbursements, and the petition granted annulling the determination of the respondent board and directing it to adjust the pertinent June 30, 1974 average comparable rentals in conformity with its post-July 1, 1974 procedures. The petition reviewed covers 40 apartments in the Parkchester development which had been vacated between January 1, 1974 and June 30, 1974 and which new tenants had commenced renting sometime after July 1, 1974 up to December, 1974. These apartments, once rent controlled, were, upon vacancy, exempted from control by chapter 371 of the Laws of 1971, and then recontrolled by the Emergency Tenants Protective Act (L 1974, ch 576) under which the respondent board adopted procedures to determine fair market rents. Under these procedures the sole difference between pre-July 1, 1974 cases and post-June 30, 1974 cases was a one-year guideline increase to update rents to those "generally prevailing in the same area for substantially similar housing accommodations" as required by section YY51-6.0.2 (subd b, par 1) of the Administrative Code of the City of New York. In applying the guideline increase the respondent board granted the increase to 10 other apartments rented during the same period as the apartments here because they had been vacated after July 1, 1974. The board has also recognized that apartments rented in 1975 should not be limited to comparable rentals in effect on June 30, 1974. As to these 40 apartments, however, the board has denied the increase by applying its procedures to use as a criterion for prevailing rents those that were in effect when the apartment was vacated as opposed to the time when the new lease commenced. To achieve the legislative purpose, a statutory interpretation must be given under which "rents generally prevailing" are those in effect on the date of the commencement of the lease. The purpose of computing a fair market rent is to ensure that a tenant receives just such a rental; in other words, a rent based upon other rents established at the same time and during the same period. There is no rational basis for a differentiation based upon whether an apartment was vacated prior to or after July 1, 1974. Otherwise, where an apartment was vacancy decontrolled prior to June 30, 1974 and no new initial rent was established prior to that date, the old rent controlled rent would be established, a result that would completely ignore the requisite for accommodation to "rents generally prevailing". Concur — Birns, J.P., Fein and Lynch, JJ.

Ross and Carro, JJ., concur in a memorandum by Carro, J., as follows: Forty apartments are involved herein. It was stipulated, however, that two would be considered as typical and exemplary for the purposes of this proceeding and appeal. Of these two representative apartments, one was vacancy decontrolled on March 31, 1974 and remained vacant until July 15, 1974, and the other was vacancy decontrolled on February 28, 1974 and remained vacant until December 1, 1974. Thus, one of the apartments remained vacant for three and one-half months and the other for eight months, while both were relet within one month of becoming eligible for the 9% one-year guidelines increase. Given the state of the rental market, the implication arises that the vacancies were the result of the owner's option and perhaps a deliberate attempt to avoid in some part the operation of the law. This is admittedly speculation, as the record is barren of further evidence, and the issue was not raised below. Nevertheless, the observation should not go unnoted.